IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No.

DOUGLAS LEWANDOWSKI,

        Plaintiff,

v.

BREMEN MENELLI
a/k/a GENISLEY ESPINDULA
and NICHOLAS DEJESU,

        Defendants.

## COMPLAINT

Plaintiff Douglas Lewandowski ("Douglas"), by and through his attorneys, The Lomnitzer Law Firm, P.A., and for his Complaint against Defendants Bremen Menelli a/k/a Genisley Espindula ("Bremen") and Nicholas DeJesu ("Nicholas") (collectively, "Defendants"), states as follows:

## NATURE OF THE ACTION

1. In 2021, Douglas and Bremen met at a gay pride event where they had consensual sex and recorded a video of their encounter. Douglas expressly instructed Bremen to not share the video with anyone and Bremen agreed.

2. Nevertheless, Bremen later published the video to OnlyFans, a website that allows adult content creators to charge subscribers for access to their photos and videos. However, Bremen did not have Douglas' consent to publish the video to OnlyFans and it has since been published to at least three other websites.

3. Douglas later retained counsel to send a letter to Bremen in an effort to resolve this matter without resorting to litigation. After Bremen received the letter, his husband, Nicholas, called Douglas' attorney and threatened to further disseminate the video in retaliation if Douglas took any further action against Bremen.

4. Accordingly, Douglas brings this action against Bremen for **(1)** nonconsensual disclosure of an intimate visual depiction in violation of 15 U.S.C. § 6851, **(2)** unauthorized use of likeness in violation of Fla. Stat. § 540.08, **(3)** invasion of privacy – intrusion upon seclusion, **(4)** invasion of privacy – public disclosure of private facts, and **(5)** unjust enrichment and against Nicholas for **(6)** threatened dissemination of a private sexual image in violation of 740 ILCS 190/10(a).

5. With respect to Bremen, Douglas is seeking to recover statutory damages of at least $150,000.00, compensatory damages, punitive damages, injunctive relief, and attorneys' fees and costs. With respect to Nicholas, he is seeking to recover statutory damages of at least $10,000.00, punitive damages, injunctive relief, and attorneys' fees and costs

## THE PARTIES

6. Douglas is an individual and resident of Chicago, Cook County, Illinois.

7. On information and belief, Bremen is an individual and resident of Fort Lauderdale, Broward County, Florida.

8. On information and belief, Nicholas is an individual and resident of Fort Lauderdale, Broward County, Florida

9. On information and belief, Bremen and Nicholas are married.

**JURISDICTION AND VENUE**

10. This Court has original jurisdiction of this action pursuant to Title 28, Section 1331 of the United States Code ("Code") because Douglas' claims arise, in part, under federal law. *See* 28 U.S.C. § 1331.

11. Pursuant to Section 1367(a) of the Code, this Court has supplemental jurisdiction of Douglas' claims against arising under state law because they are so related to his claims arising under federal law that they form part of the same case or controversy. *Id*. at § 1367(a).

12. The Southern District of Florida is the proper venue for this action pursuant to Section 1391(b)(1) of the Code because, on information and belief, Defendants are residents of Fort Lauderdale, Broward County, Florida, which is located in this judicial district. *Id*. at § 1391(b)(1).

**FACTUAL ALLEGATIONS**

**I.    Douglas and Bremen's Encounter**

13. In or around November 2021, Douglas attended a gay pride event in Palm Springs, California where he met Bremen for the first time.

14. After meeting, Douglas and Bremen went to Douglas' hotel room, where no one else was present, to have sex.

15. Douglas and Bremen agreed to record a video of their encounter, so Bremen used his cell phone to record them.

16. The video that Bremen recorded ("Video") shows him and Douglas having sex.

17. Bremen's face as well as his fully nude body, including his penis and buttocks, are visible in the Video.

18. After they had sex, Douglas told Bremen that the Video was just between them and expressly instructed him to not share the Video with anyone.

19. Bremen expressly agreed that he would not share the Video with anyone.

## II.    Background on OnlyFans

20. Bremen previously had an account on the website OnlyFans.com ("OnlyFans") with the username "bremenfitness."

21. OnlyFans is a website where users – known as "creators" – can publish content such as photos and videos to their accounts. A creator's account is similar to a feed on social media websites such as Facebook, Instagram, and X (f/k/a Twitter) where their posts containing their content are viewable in reverse chronological order.

22. Other users – known as "followers" – can access a creator's content by subscribing to their account and, in most instances, paying a monthly subscription fee.

23. Additionally, followers can tip creators, pay for personalized content, and directly message creators on a pay-per-view basis.

24. In recent years, OnlyFans has become increasingly popular with adult content creators.

25. However, a creator must complete an additional step when publishing adult content depicting other creators, which are known as "collaborators."

26. If the collaborator has their own verified OnlyFans account, the creator must "tag" the collaborator's username in the post publishing the adult content. The post will only become visible to the creator's subscribers after OnlyFans verifies that the individual depicted in the content is, in fact, the collaborator.

27. If the collaborator does not have a verified OnlyFans account, the creator must send a link from their own account to the collaborator where they must complete an ID verification process and accept OnlyFans' terms of service. As before, the post will only become visible to the creator's subscribers after OnlyFans verifies the collaborator's identity and the collaborator accepts its terms of service.

### III. Bremen's Unauthorized Publication of the Video

28. In or around June 2022, Douglas discovered that Bremen had published the Video to his OnlyFans account.

29. However, Douglas never gave Bremen his consent to publish the Video, nor did Bremen ever contact Douglas to request his consent before publishing it.

30. Douglas has never had a creator OnlyFans account, so it is impossible for Bremen to have tagged him as a collaborator in the post publishing the Video.

31. Additionally, Douglas does not know when Bremen published the Video to his OnlyFans account.

32. Bremen claims to have deactivated his OnlyFans account, but Douglas does not know when he did so or how long the Video remained published.

33. Moreover, Douglas does not know how much money Bremen made in subscription fees during the time the Video remained published or if he sold it on a pay-per-view basis.

34. In or around June 2022 or July 2022, Douglas discovered that the Video had been published to LPSG.com, though it has since been removed from that website.

35. In November 2024, Douglas discovered that the Video had been published to Bluesky.com, though the Video has since been removed from that website as well.

36. In December 2024, Douglas discovered that the Video had been published to streamtape.com, though it remains on this website despite his numerous requests for it to be removed.

### IV. Nicholas' Threat to Further Distribute the Video

37. On May 28, 2025, Douglas' attorney sent a letter to Bremen explaining that his publication of the Video to his OnlyFans account violated federal and state law. As such, Douglas demanded that Bremen agree to, *inter alia*, make a monetary payment to settle this matter otherwise Douglas would pursue litigation.

38. Later that day, Nicholas and Bremen called Douglas' attorney regarding the letter.

39. Nicholas demanded that Douglas refrain from taking any action against Bremen and threatened to send the Video to Nicholas' family, friends, and colleagues if he failed to comply with this demand.

40. Douglas' attorney was located in Chicago, Illinois when Nicholas and Bremen called him.

41. Minutes after the phone call ended, Nicholas sent a text message to Douglas and his attorney in which he further threatened to disseminate the video to Douglas family, employer, and colleagues. He stated:

> [T]he video will likely be disseminated over this. Douglas, would you want your family, your employer, your business associates to see this?? That's what you make possible by extorting Bremen. […] [C]rawl back under the rock from which you came and do not bother my parter [sic] and me again. I will make this very inconvenient and uncomfortable for all of you. […] I will make sure of that.

*See* Text Message from Nicholas, attached as **Exhibit 1**.

42. Douglas was located in New York, New York and his attorney was located in Chicago, Illinois when Nicholas sent the text message to them.

Page **6** of 15

**COUNT 1**
**NONCONSENSUAL DISCLOSURE OF AN INTIMATE**
**VISUAL DEPICTION IN VIOLATION OF 15 U.S.C. § 6851**
**(AGAINST BREMEN)**

43.     Douglas incorporates paragraphs 1-42 as though fully set forth herein.

44.     At all times relevant herein, there was in force and effect Title 15, Section 6851 of the Code. *See* 15 U.S.C. § 6851.

45.     Section 6851(b)(1)(A) states:

[A]n individual whose intimate visual depiction is disclosed, in or affecting interstate or foreign commerce or using any means or facility of interstate or foreign commerce, without the consent of the individual, where such disclosure was made by a person who knows that, or recklessly disregards whether, the individual has not consented to such disclosure, may bring a civil action against that person in an appropriate district court of the United States for relief[.]

*Id*. at § (b)(1)(A).

46.     The Video is an "intimate visual depiction" as defined by Section 6851(a)(5)(A). *Id*. at § (a)(5)(A).

47.     Content that is published to OnlyFans, such as the Video, is in or affects interstate or foreign commerce. *Id*. at § 78c(a)(17).

48.     OnlyFans is accessible throughout the United States, thus it is a means or facility of interstate commerce.

49.     Bremen disclosed the Video when he published it to OnlyFans.

50.     Bremen knew, or recklessly disregarded, that he did not have Douglas' consent to publish the Video to OnlyFans.

51.     Based on the foregoing, Bremen's publication of the Video to OnlyFans entitles Douglas to relief pursuant to Section 6851(b)(3), which states:

In a civil action filed under this section—

(i) an individual may recover the actual damages sustained by the individual or liquidated damages in the amount of $150,000, and the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred; and

(ii) the court may, in addition to any other relief available at law, order equitable relief, including a temporary restraining order, a preliminary injunction, or a permanent injunction ordering the defendant to cease display or disclosure of the visual depiction.

*Id*. at § (b)(3).

WHEREFORE, Douglas respectfully requests that this Court enter an Order awarding to him the following relief:

A. Entering judgment in favor of Douglas and against Bremen;

B. Statutory damages in an amount to be proven at trial, but no less than $150,000.00;

C. Permanently enjoining Bremen from further disclosing, distributing, or publishing the Video in any way;

D. Attorneys' fees and costs; and

E. Any additional relief this Court deems necessary and just.

## COUNT 2
## UNAUTHORIZED USE OF LIKENESS
## IN VIOLATION OF FLA. STAT. § 540.08
## (AGAINST BREMEN)

52. Douglas incorporates paragraphs 1-42 as though fully set forth herein.

53. At all times relevant herein, there was in force and effect Section 540.08 of the Florida Statutes. *See* Fla. Stat. § 540.08.

54. Section 540.08(1) states:

> No person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use given by:
>
> (a) Such person; or
>
> (b) Any other person, firm or corporation authorized in writing by such person to license the commercial use of her or his name or likeness; or
>
> (c) If such person is deceased, any person, firm or corporation authorized in writing to license the commercial use of her or his name or likeness, or if no person, firm or corporation is so authorized, then by any one from among a class composed of her or his surviving spouse and surviving children.

*Id.* at § (1).

55. The Video depicted Douglas' likeness.

56. Bremen published, displayed, or otherwise publicly used the Video for purposes of trade or for a commercial or advertising purpose when he published it to his OnlyFans account.

57. However, Bremen did not have any written or oral consent to publish the Video to his OnlyFans account.

58. Based on the foregoing, Bremen's publication of the Video to OnlyFans entitles Douglas to relief pursuant to Section 540.08(2), which states:

> In the event the consent required in subsection (1) is not obtained, the person whose name, portrait, photograph, or other likeness is so used, or any person, firm, or corporation authorized by such person in writing to license the commercial use of her or his name or likeness, or, if the person whose likeness is used is deceased, any person, firm, or corporation having the right to give such consent, as provided hereinabove, may bring an action to enjoin such unauthorized publication, printing, display or other public use, and to recover damages for any loss or injury sustained

by reason thereof, including an amount which would have been a reasonable royalty, and punitive or exemplary damages.

*Id*. at § (2).

WHEREFORE, Douglas respectfully requests that this Court enter an Order awarding to him the following relief:

    A.    Entering judgment in favor of Douglas and against Bremen;

    B.    Permanently enjoining Bremen from further disclosing, distributing, or publishing the Video in any way;

    C.    Statutory damages in an amount to be proven at trial;

    D.    Punitive damages in an amount to be proven at trial; and

    E.    Any additional relief this Court deems necessary and just.

## COUNT 3
## INVASION OF PRIVACY –
## INTRUSION UPON SECLUSION
## (AGAINST BREMEN)

59.    Douglas incorporates paragraphs 1-42 as though fully set forth herein.

60.    When Bremen published the Video to his OnlyFans account without Douglas' consent, he intruded upon Douglas solitude, seclusion, private affairs, or private concerns.

61.    Given the nature of the Video and Douglas' lack of consent to its publication, such intrusion would be highly offensive to a reasonable person.

WHEREFORE, Douglas respectfully requests that this Court enter an Order awarding to him the following relief:

    A.    Entering judgment in favor of Douglas and against Bremen;

    B.    Permanently enjoining Bremen from further disclosing, distributing, or publishing the Video in any way;

C. Damages in an amount to be proven at trial;

D. Punitive damages in an amount to be proven at trial; and

E. Any additional relief this Court deems necessary and just.

## COUNT 4
## INVASION OF PRIVACY –
## PUBLIC DISCLOSURE OF PRIVATE FACTS
## (AGAINST BREMEN)

62. Douglas incorporates paragraphs 1-42 as though fully set forth herein.

63. The Video was private because Douglas expressly instructed Bremen to not share it with anyone, yet Bremen published it to his OnlyFans account without Douglas' consent.

64. Given the nature of the Video and Douglas' lack of consent to its publication, the Video is offensive and not of public concern.

WHEREFORE, Douglas respectfully requests that this Court enter an Order awarding to him the following relief:

A. Entering judgment in favor of Douglas and against Bremen;

B. Permanently enjoining Bremen from further disclosing, distributing, or publishing the Video in any way;

C. Damages in an amount to be proven at trial;

D. Punitive damages in an amount to be proven at trial; and

E. Any additional relief this Court deems necessary and just.

## COUNT 5
## UNJUST ENRICHMENT
## (AGAINST BREMEN)

65. Douglas incorporates paragraphs 1-42 as though fully set forth herein.

66. Douglas conferred a benefit upon Bremen when he consented to Bremen recording the Video, but only if Bremen agreed to not share the Video with anyone.

67. Bremen voluntarily accepted this benefit when he agreed to not share the Video with anyone and proceeded to record his encounter with Douglas.

68. Bremen also retained this benefit when he retained the recording of the Video.

69. Nevertheless, Bremen published the Video to his OnlyFans account and, on information and belief, received money from his monthly subscription fees.

70. However, Bremen did not have Douglas' consent to publish the Video, nor did he compensate Douglas for appearing in the Video.

71. The foregoing circumstances are such that it would be inequitable for Bremen to retain this benefit without first paying the value thereof to Douglas.

WHEREFORE, Douglas respectfully requests that this Court enter an Order awarding to him the following relief:

A. Entering judgment in favor of Douglas and against Bremen;

B. Permanently enjoining Bremen from further disclosing, distributing, or publishing the Video in any way;

C. Damages in an amount to be proven at trial; and

D. Any additional relief this Court deems necessary and just.

**COUNT 6**
**THREATENED DISSEMINATION OF A PRIVATE**
**SEXUAL IMAGE IN VIOLATION OF 740 ILCS 190/10(a)**
**(AGAINST NICHOLAS)**

72. Douglas incorporates paragraphs 1-42 as though fully set forth herein.

73. At all times relevant herein, there was in force and effect the Illinois Civil Remedies for Nonconsensual Dissemination of Private Sexual Images Act ("Act"). *See* 740 ILCS 190/1, *et seq.*[1]

74. Section 10(a) of the Act states:

[I]f a depicted individual is identifiable to a reasonable person and suffers harm from the intentional dissemination or threatened dissemination by a person over the age of 18 of a private or intentionally digitally altered sexual image without the depicted individual's consent, the depicted individual has a cause of action against the person if the person knew or recklessly disregarded the possibility that:

(1) the depicted individual did not consent to the dissemination;
(2) the image was a private or intentionally digitally altered sexual image; and
(3) the depicted individual was identifiable.

*Id*. at § 10(a).

75. Douglas is a depicted individual identifiable in the Video. *Id*. at § 5(3) and (6).

76. The Video is a private sexual image of Douglas. *Id*. at § (10) and (14).

77. During his phone call with Douglas' attorney, Nicholas threatened to disseminate the Video to Douglas' family, friends, and colleagues if Douglas did not refrain from taking action against Bremen for his unauthorized publication of the Video on OnlyFans.

78. Nicholas does not have Douglas' consent to disseminate the Video to anyone.

79. As a result of Nicholas' threat, Douglas suffered harm in the form of emotional distress. *Id*. at § (5).

80. Based on the foregoing, Douglas is entitled to relief pursuant to Section 25 of the Act, which states:

---

[1] Under the "most significant relationship test" adopted by Florida state courts, Illinois law governs Douglas' claims against Nicholas. *See Middleton v. Hollywood Rep. LLC*, 137 F.4th 1287 (11th Cir. 2025).

    (a) In an action under this Act, a prevailing plaintiff may recover:

        (1) the greater of:

            (A) economic and noneconomic damages proximately caused by the defendant's dissemination or threatened dissemination, including damages for emotional distress whether or not accompanied by other damages; or

            (B) statutory damages, not to exceed $10,000, against each defendant found liable under this Act for all disseminations and threatened disseminations by the defendant of which the plaintiff knew or reasonably should have known when filing the action or that became known during the pendency of the action. In determining the amount of statutory damages under this subsection, consideration shall be given to the age of the parties at the time of the disseminations or threatened disseminations, the number of disseminations or threatened disseminations made by the defendant, the breadth of distribution of the image by the defendant, and other exacerbating or mitigating factors;

        (2) an amount equal to any monetary gain made by the defendant from dissemination of the private sexual image; and

        (3) punitive damages.

    (b) In an action under this Act, the court may award a prevailing plaintiff:

        (1) reasonable attorney's fees and costs; and

        (2) additional relief, including equitable relief such as a temporary restraining order, preliminary injunction, or permanent injunction ordering the defendant to cease the display or disclosure of the image.

*Id.* at § 25(a)-(b).

    WHEREFORE, Douglas respectfully requests that this Court enter an Order awarding to him the following relief:

    A.    Entering judgment in favor of Douglas and against Nicholas;

B. Permanently enjoining Nicholas from disclosing, distributing, or publishing the Video in any way;

C. Statutory damages in an amount to be proven at trial, but no less than $10,000.00;

D. Punitive damages in an amount to be proven at trial;

E. Attorneys' fees and costs; and

F. Any additional relief this Court deems necessary and just.

Respectfully Submitted,

*/s/Lorri Lomnitzer*
Lorri Lomnitzer, Esq.
Fla. Bar No. 37632
Lorri@Lomnitzerlaw.com
Kelly Ann desRosiers, Esq.
Fla. Bar No. 1017878
Kelly@LomnitzerLaw.com
THE LOMNITZER LAW FIRM, P.A.
7999 N. Federal Highway, Suite 202
Boca Raton, Florida 33487
Phone: 561-953-9300
Fax: 561-953-3455
Litigation@LomnitzerLaw.com

Joshua Pagan, Esq.
IL Bar No. 6324454 *Pro Hac Vice Pending*
MUDD LAW
411 S. Sangamon St., Suite 1B
Chicago, Illinois 60607
Phone: 312-964-5051
Fax: 312-803-1667
josh@muddlaw.com